IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

STACY BARZELIS                    §
                                  §
VS.                               §   CIVIL ACTION NO. 4:12-CV-611-Y
                                  §
FLAGSTAR BANK, F.S.B.             §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the motion for summary judgment filed by Flagstar Bank, F.S.B. ("Flagstar")(doc. 97).  After review of the motion, response, related briefs, appendices, and applicable law, the Court GRANTS in part and DENIES in part Flagstar's motion for summary judgment.

## I.   BACKGROUND

Plaintiff Stacy Barzelis and her late husband, Nicholas Barzelis, refinanced their home loan with Fairway Independent Mortgage Corporation ("Fairway") in August 2007. Nicholas Barzelis executed the promissory note ("the Note") but Stacy Barzelis did not.  Both of the Barzelises, however, executed a Texas Home Equity Security Instrument ("Security Instrument") in connection with the Note, as required by the Texas Constitution. *See* TEX. CONST. art. XVI, § 50(a)(6)(A)(requiring spousal consent to create a valid lien on the marital homestead). In October 2007, Fairway  assigned the Note to Flagstar. Subsequent events gave rise to the present case.

According to Flagstar, the Barzelises first defaulted on their

mortgage loan in December 2007. In 2008, Nicholas Barzelis began having medical problems. As a result, the Barezlises fell further behind on their mortgage payments to Flagstar. After providing the Barzelises with notices of default and giving opportunities to cure, Flagstar filed its first application for foreclosure on July 2, 2009. Nicholas Barzelis entered into a home-saver payment-forbearance agreement with Flagstar on July 27. The forbearance agreement provided for six monthly payments that would have cured the default on January 1, 2010. But Nicholas Barzelis died in October 2009.

On January 14, 2010, Flagstar sent another notice (in letter form) addressed to Nicholas Barzelis that stated the amount of the alleged arrearage, plus late charges, and gave a thirty-day deadline to cure the default. The default was not cured, however, and on May 3, 2010, Stacy Barzelis filed a Chapter 13 bankruptcy petition. According to Barzelis, she then sent payments to Flagstar through her trustee that were rejected by Flagstar. On February 27, 2012, the bankruptcy court approved a plan modification that would require Barzelis to send payments directly to Flagstar.

On April 12, Barzelis sent a qualified written request ("QWR") under the Real Estate Settlement Procedures Act ("RESPA") to obtain information from Flagstar regarding the loan. On May 25, Flagstar responded to the QWR by informing Barzelis that, to obtain information on the loan, she must demonstrate her authority to make

that request by providing a letter of authority from her husband's probate estate. In response, on June 7, Barzelis sent a second, almost identical, QWR to Flagstar, in which she insisted that she did not need letters of authority from a probate estate because the estate was not contested. Flagstar never responded to the second QWR. Barzelis received a discharge in her bankruptcy case and, on June 19, her bankruptcy case was closed.

On July 22, Flagstar––through its attorney––notified Barzelis that the loan had been referred to a law firm for foreclosure. On August 8, Barzelis filed suit in state court in response to Flagstar's initiation of foreclosure. Flagstar removed the case to this Court, and Barzelis amended her complaint to include various state and federal claims. This Court dismissed all of Plaintiff's state-law claims and granted summary judgment on her RESPA claim. Plaintiff appealed to the United States Court of Appeals for the Fifth Court. The Fifth Circuit affirmed this Court's holding that Barzelis's negligent-misrepresentation claim, and her breach-of-contract claim under the Texas Property Code, were both preempted by the Home Owners' Loan Act of 1933 ("HOLA"). The Fifth Circuit, however, otherwise reversed by holding that: (1) the Texas Debt Collection Act was not preempted by HOLA; (2) HOLA did not preempt Barzelis's breach-of-contract claims under the provisions of the Security Instrument; and (3) Barzelis was the legal borrower as it relates to her RESPA claim, based on Texas's community-property and

estate law. The Fifth Circuit remanded the case to this Court for further consideration.

On remand, Plaintiff filed her second amended complaint alleging the following claims: (1) Breach of Contract; (2) Anticipatory Breach of Contract; (3) violations of the Texas Consumer Credit Code/Debt Collection Practices Act; and (4) violations of the Real Estate Settlement Procedures Act ("RESPA"). Flagstar filed a motion for summary judgment, which is now under consideration by the Court.

## II. SUMMARY-JUDGMENT STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant, except as to affirmative defenses, must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the

plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is **required** to consider only the cited materials, it **may** consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "After the non-movant has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III. DISCUSSION AND ANALYSIS

A.   Judicial Notice

Flagstar requests that the Court take judicial notice of the papers filed in the bankruptcy matter: *In re Stacy Konopisos Barzelis*, Cause No. 10-42968-rfn13, United States Bankruptcy Court, Northern District of Texas, Fort Worth division. (See Def.'s Mot. Summ. J. (doc. 97) 3, n. 1.) For evidentiary support of its motion, Flagstar has attached several documents that were filed in Barzelis's bankruptcy case. Barzelis objects to Flagstar's request because it is "too vague," but also acknowledges that a court may take judicial notice to establish the fact of such litigation and related papers filed. (See Pl.'s Br. in Supp of Resp. (doc. 102) 6.)

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)(quoting Fed. R. Evid. 201(b)). A district court may take judicial notice of publicly available documents that are produced by a litigant that "were matters of public record directly relevant to the issue at hand." *Id*. Barzelis does not dispute that she was the debtor in the bankruptcy case at issue, nor does she dispute the accuracy of the bankruptcy

documents submitted as evidence by Flagstar. Flagstar claims that Barzelis should be judicially estopped from asserting claims that she could have raised in her bankruptcy but failed to list on her schedules. One of Barzelis's claims is that Flagstar improperly rejected payments that she made to it during her bankruptcy proceeding. Accordingly, the Court takes judicial notice of Barzelis's bankruptcy papers, including the schedules she submitted.

B.   Judicial Estoppel

Flagstar requests that this Court apply judicial estoppel to Barzelis's claims against Flagstar that arose prior to and during her bankruptcy proceeding because she did not disclose her claims or potential claims against Flagstar to the bankruptcy court on her Schedule B as required by law.[1] (See Def.'s App. in Supp. of Mot. Summ. J. (doc. 97) 50.) Barzelis did, however, list her home's value, Flagstar's principal claim ($147,000.00), and its arrearage claim ($22,000.00) on her Schedule D. According to Flagstar, Barzelis had a duty to disclose her claims against it during the bankruptcy proceeding and, because she failed to do so, she is now

---

[1] When Flagstar asserted an affirmative defense in its motion for summary judgment, the burden of proof shifted to it to establish all elements of the defense and to demonstrate that there is no genuine issue of material fact as to that defense. To demonstrate that a particular fact cannot be genuinely in dispute, a defendant asserting an affirmative defense must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), and (b) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. See Fed. R. Civ. P. 56(c)(1).

estopped from asserting such claims in this Court.

Judicial estoppel is an equitable doctrine and should be "invoked by a court at its discretion for the purpose of protecting the integrity of the judicial process." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015)(hereinafter "Long")(citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)(internal quotation marks omitted). "Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to achieve substantial justice." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011)(citation omitted). And "[a]pplication of the doctrine . . . should be guided by a sense of fairness, with the facts of the particular dispute in mind." *Id*. "The concern of judicial estoppel is to avoid unfair results and unseemliness." *Id*. (citation omitted).

Before invoking judicial estoppel, a court should look to whether: "(1) the party against whom judicial estoppel is sought has asserted a legal position [that] is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Long*, 798 F.3d at 272 (quoting *Reed*, 650 F.3d at 574).  Although the Court should give consideration to these elements, "the Supreme Court has refused to establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id*. Different considerations "may inform the doctrine's application in specific

contexts." *Reed*, 650 F.3d at 574 (quoting *New Hampshire*, 532 U.S. at 751).

The Fifth Circuit has held that "judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Id*. "[J]udicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system." *Id*. But the Fifth Circuit has also acknowledged that "there is no per se rule estopping any party who fails to disclose potential claims to a bankruptcy court." *Long*, 798 F.3d at 271. The Fifth Circuit's view is consistent with the doctrine's underlying policy concern, which is to promote fairness while upholding the integrity of the bankruptcy system.

When Barzelis filed her schedules in her bankruptcy case, she indicated that she had no existing claims or potential claims. (See Def.'s App. (doc. 98) 50.) But in the present case, she asserts, in part, claims that she possessed at the time of her bankruptcy filing or that arose during its pendency. So Barzelis now asserts a position that is plainly inconsistent with the one she asserted in the bankruptcy court, and thus the first element of judicial estoppel is satisfied. The bankruptcy court accepted and relied upon Barzelis's representation in her schedules that she had no

claims or potential claims, which would have been assets of the bankruptcy estate, and proceeded to administer the estate. Barzelis subsequently received a discharge of liability for a large portion of her debts. As such, the second--acceptance--element of judicial estoppel has been met.

To prove the last element, Flagstar must show that Barzelis "did not act inadvertently." In *Long*, the Fifth Circuit stated that "inadvertence exists only when, in general, the debtor either lacks knowledge of the undisclosed claims **or** has no motive for their concealment." 798 F.3d at 272 (internal quotation marks and citation omitted)(emphasis added). Flagstar points out in its motion that to support a claim of inadvertence Barzelis "must show not that she was unaware that she had a duty to disclose her claims but that . . . she was unaware of the facts giving rise to them." (Def.'s Mot. Summ. J. (doc. 97) 8)(quoting *Long*, 798 F.3d at 272).

Flagstar is correct that if Barzelis asserted **only** a lack of knowledge as proof of her inadvertence, that lack of knowledge must have been as to the facts giving rise to the claims rather than her duty to disclose them. But lack of knowledge is not the reason Barzelis claims she should be found to have acted inadvertently. Instead, Barzelis contends, despite having no burden to prove it, that she had no motive to conceal the claims to the bankruptcy court. (See Pl.'s Br. in Supp. of Resp. to Def.'s Mot. Summ. J. (doc. 102) 14.) According to Barzelis, her lack of motive to

conceal is evidenced by the fact that she would not have received a financial windfall by asserting her claims after her bankruptcy proceeding. Flagstar presented no summary-judgment evidence demonstrating Barzelis's motive for concealment of her claims to the bankruptcy court. As a result, Flagstar, the party with the burden of proof, has failed to demonstrate the inadvertence element of its estoppel defense. Accordingly, Flagstar's motion for summary judgment on the defense of judicial estoppel is denied.

C.   Breach-of-Contract Claim

Under Texas law, the elements of a breach-of-contract action are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)(citation omitted). According to Barzelis, Flagstar "has breached ¶¶ 18 and 21 of the Security Instrument contract" because "Flagstar never gave Plaintiff the right to cure any default and reinstate her note." (Pl.'s 2d Am. Compl. (doc. 87) 5.) Paragraphs 18 and 21 of the Security Instrument, in pertinent part, provide:

> 18. Borrower's Right to Reinstate After Acceleration. If Borrower [(a) pays Lender all sums that would be due under this Security Instrument and Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; and (c) pays all expenses] . . . this Security Instrument, shall continued unchanged.

        *     *     *

> 21. Acceleration. Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.

(Pl.'s App. (doc. 103) 27-30.)

Barzelis claims that Flagstar never gave her the opportunity to cure the default before accelerating the note and even rejected her attempts to make payments on the loan. (See Pl.'s 2d Am. Compl. (doc. 87) 6-7.) As a result, Barzelis claims that Flagstar not only breached the contract, but further "prevented [her] from performing the contract." (*Id.*) According to Barzelis, by refusing her payments, Flagstar has violated paragraphs 1 and 2 of the Security Instrument. (See *id.* at 7.) In pertinent part, paragraphs 1 and 2 of the Security Instrument provide:

> 1. Payment of Principal, Interest, Escrow Items, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.

        *     *     *

> **Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current.** Lender **may accept** any payment or partial payment insufficient to bring the

Extension of Credit current, **without waiver** of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future . . . .

\*       \*       \*

2.  Application of Payments or Proceeds.  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; () amounts due under Section 3. **Such payments shall be applied to each Periodic Payment in the order in which it became due.**

(Pl.'s App. (doc. 103) 20)(emphasis added).

"When a contract is not ambiguous, the construction of the written instrument is a question of law for the court." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999)(citations omitted). "A contract is unambiguous if it can be given a definite or certain legal meaning." *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013)(citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003)).  Neither party asserts that the Security Instrument is ambiguous, and the Court must interpret an unambiguous contract as written. *See McLane Foodservice*, 736 F.3d at 377.

Barzelis claims that Flagstar breached the Security Instrument when it "improperly rejected" payments that she made, and thus prevented her from performing under the contract.  But she does not provide any returned checks, correspondence from Flagstar, or any other evidence indicating it rejected her payments.

Even if the Court were to accept that Barzelis actually made payments to Flagstar, she still does not show that Flagstar "improperly rejected" them. She does not show that she was not in default at the time the payments were rejected, if they were, or that she submitted payments that would have brought the note current. Instead, the evidence submitted shows that the Barzelises were in default as early as the notice dated December 20, 2007.[2] (See Def.'s App. (doc. 98) 36.) Flagstar sent another notice on January 9, 2008, but this time the notice was entitled "Notice of Default and Intent to Accelerate." (See *id*. at 37.) On April 23, Flagstar sent a letter that outlined the parties' reinstatement arrangement. (See *id*. at 39-41.) This letter clearly sets out when payments would be due under the arrangement and the completion date.(*Id*.) And on June 5, Flagstar sent another notice entitled "Notice of Default and Intent to Accelerate." (See *id*. at 38.) Again, Barzelis does not submit any evidence that she made payments in compliance with the Security Instrument to bring the note current and that such payments were rejected by Flagstar. Under the plain language of paragraph 1 of the Security Instrument, Flagstar was not required to accept any payments less than an

---

[2] Under Texas law, "a party to a contract who is himself in default cannot maintain a suit for its breach." *Langlois v. Wells Fargo Bank Nat. Ass'n*, 581 F. App'x 421, 425 (5th Cir. 2014)(quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex.1990)). Although the evidence shows that the Barzelises were in default long before she brought a breach-of-contract suit against Flagstar, the Court's inquiry does not end there because Barzelis alleges that Flagstar breached the Security Instrument by rejecting the payments she allegedly made during and after her bankruptcy, and thus, prevented her from performing the contract.

amount that would bring the mortgage current. (See Pl.'s App. (doc. 103) 20.)

According to the evidence submitted, all of the events recited above occurred before Flagstar accelerated the note and filed an application for foreclosure on July 2, 2009. Even after accelerating, and with foreclosure pending, Flagstar gave the Barzelises another opportunity to cure the default by executing a forbearance agreement with Nicholas Barzelis on August 1. (See *id*. at 43; Pl.'s 2d Am. Compl. (doc. 87) 3.) Under the forbearance agreement, the Note would become current on January 1, 2010, provided that all payments were made. The forbearance agreement also states "[t]he Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Agreement." (See Def.'s App. (doc. 98) 44-45.) Although Nicholas Barzelis passed away in October 2009, Plaintiff alleges that she "successfully completed the forbearance agreement and Flagstar's application for order of foreclosure was dismissed on March 17, 2010."(Pl.'s 2d Am. Compl. at 3.) Plaintiff does not, however, allege, nor does she submit any evidence that Flagstar "improperly rejected" her payments during this time. As such, she has failed to demonstrate a genuine dispute of fact regarding any payments allegedly made and rejected during the forbearance period.

Barzelis's argument that Flagstar rejected her alleged payments during bankruptcy fails for the same reasons. Barzelis

never alleges or provides evidence to the Court that she attempted to cure the full amount of the default in connection with the mortgage. The evidence shows that Barzelis was in default in the amount of $29,874.34 on January 18, 2012, when the Chapter 13 trustee moved to modify the plan by having Barzelis pay Flagstar directly, rather than through bankruptcy-plan payments. (See Def.'s App. 87-88.) The bankruptcy court approved the plan modification on February 27. (See *id*. at 89.) Barzelis fails to submit evidence to show that her alleged attempted payments would have been enough to cure the entirety of this default but were nevertheless rejected by Flagstar. Barzelis's conclusory statements that Flagstar "improperly rejected payments," is insufficient to create a material fact issue on this issue. Rather, she must come forward with evidence that would show Flagstar violated the Security Instrument by rejecting her payments. And under the Security Instrument, Flagstar was within its rights to reject payments less than the total amount necessary to cure the default. Consequently, the Court concludes that Flagstar is entitled to summary judgment to the extent Barzelis claims Flagstar breached the Security Instrument by rejecting her alleged payments.

Barzelis further claims that Flagstar breached the Security Instrument by not giving proper notice before acceleration because the January and June 2008 letters Flagstar sent Barzelis did not specify the default nor the action required to cure the default.

(See Pl.'s Br. (doc. 102) 23.) But Flagstar did provide notice in the letters that "such Deed of Trust has been declared in default for failure to pay installments as required." (Def.'s App. (doc. 98) 37-38.) Although the notices of default did not provide the exact amount of the Barzelises' default, Flagstar provided a telephone number they could call to obtain the exact amount. (See *id*.) And Flagstar specified in each notice "[t]he action necessary to cure such default is payment of all sums necessary to bring such loan current." (*Id.*) Each of the notices referred to the terms set out in the Deed of Trust.[3]

But as Flagstar points out, even if acceleration was improper due to deficient notice, such acceleration was thereafter withdrawn based on the forbearance agreement. (See Def.'s App. (doc. 98) 44-45.) Under Texas law, a noteholder may withdraw acceleration by agreement or by accepting payments from the party in default.[4] The forbearance agreement states "[t]he Servicer will suspend any

---

[3] "Under Texas law, a deed of trust is a mortgage with a power to sell on default." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 622 (N.D. Tex. 2011) (citation omitted). "A mortgage created by a deed of trust is an interest created by a written instrument providing security for payment." *Id*. "The security is established by a note." *Id*. The Security Instrument referred to by the parties is by definition a deed of trust because it gives Flagstar the power of sale under paragraph 22. (See Pl.'s App. (doc. 102) 30.)

[4] *See Biedryck v. U.S. Bank Nat'l Ass'n*, No. 01-14-00017-CV, 2015 WL 2228447, at *4 (Tex. App.--Houston [1st Dist.] May 12, 2015)(quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566-67 (Tex.2001)("Once a noteholder has accelerated a note, it may abandon its acceleration by agreement or by continuing to accept payments 'without exacting any remedies available to it upon declared maturity.'"). "[A] formal written agreement is not required to abandon acceleration, and a note holder may abandon acceleration by action alone and without an express agreement." *Id*., at *5 (citations omitted).

scheduled foreclosure sale, provided I continue to meet the obligations under this Agreement." (*Id.*) And even if Flagstar breached the Security Instrument by not giving the required notices, the Barzelises waived a right to such notices under the July 2009 forbearance agreement. *See United States v. Winstar Corp.*, 518 U.S. 839, 886 n. 30 (1996)(quoting Restatement (Second) of Contracts § 346, Comment a (1981)("Every breach of contract gives the injured party a right to damages against the party in breach" unless "[t]he parties ... by agreement vary the rules."). The forbearance agreement explicitly states "all rights to such notices being hereby waived to the extent permitted by Applicable Law." (See Def.'s App. (doc. 98) 43-45.) Thus, Barzelis waived the notice requirement.

On January 14, 2010, Flagstar sent another notice addressed to Nicholas Barzelis informing him of the default and giving more-detailed instructions on how to cure it. Although Barzelis does not allege that this notice was deficient under paragraphs 18 and 21 of the Security Instrument, she does complain that Flagstar continued to address the notices and account statements to Nicholas Barzelis after his death. To the extent Barzelis alleges that notices addressed to Nicholas Barzelis after his death violated the Security Instrument, such claim is foreclosed by reading the plain language of the agreement. The Security Instrument specifically provides that "[n]otice to any one Borrower shall constitute notice

to all Borrowers unless Applicable Law expressly requires otherwise." (Pl.'s App. (doc. 103) 26.) Consequently, Flagstar's motion for summary judgment is GRANTED as to Barzelis's breach-of-contract claims.

D.   Anticipatory Breach-of-Contract Claim

Under Texas law, to prevail under an anticipatory breach-of-contract claim, a plaintiff must establish (1) an absolute repudiation of the obligation by the defendant; (2) a lack of just excuse for the repudiation; and (3) damage to the non-repudiating party. *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004)(citations omitted). "An 'anticipatory breach' of a contract is one committed before the time when there is a present duty of performance and results from words or conduct indicating an intention to refuse performance in the future." *Id*. "[W]hen one party to an agreement has repudiated it, the other party may then accept the agreement as being terminated or consider the repudiation as a breach of contract and bring suit for damages." *Id*. However, a defendant's duty to pay damages is "discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return promise." *Id*. at 394-95.

As mentioned above, Barzelis claims that Flagstar improperly rejected her payments, and such rejection constitutes "an absolute repudiation of the Security Instrument." (Pl.'s Resp. (doc. 101) 24-25.) Again, Barzelis does not submit any evidence nor does she

cite case law demonstrating that the allegedly rejected payments were improperly rejected under the Security Instrument. Consequently, Flagstar's motion for summary judgment is GRANTED as to the anticipatory breach-of-contract claim.

E.    Texas Debt Collection Practices Act

In paragraph 30 of her second amended complaint, Barzelis alleges that Flagstar has violated several provisions of the Texas Debt Collection Practices Act, which is codified under TEX. FIN. CODE § 392.001, *et seq*. First, Barzelis alleges that Flagstar violated § 392.304(a)(19)[5] by misrepresenting alleged amounts owed on the mortgage, imposing wrongful charges, and by wrongfully accelerating and filing its application for foreclosure. (Pl.'s 2d Am. Compl. (doc. 87) 9.) She also alleges that Flagstar violated § 392.303(a)(2)[6] by "attempting to collect charges, interest, and/or fees and expenses that are incidental to Plaintiff's obligation." (*Id*.) Barzelis further contends that Flagstar failed to provide her with proper notice of default as required under the Security Instrument. (See Pl.'s Br. (doc. 102) 26.) Barzelis reasons that

---

[5] "Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE § 392.304(a)(19).

[6] "In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices: collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2).

"[b]ecause [Flagstar] represented that the entire balance of the Loan was accelerated and due before the proper Notice of Default was provided, [Flagstar] misrepresented the amount owed" in violation of the statute. (*Id*.) Barzelis is correct that under Texas law, "a collection notice or statement misstating the amount owed on a debt can constitute a misleading assertion regarding that debt under the TDCPA." *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 727 (S.D. Tex. 2012)(citation omitted). But Barzelis's argument is that by rejecting her payments, Flagstar has misrepresented the amount of her debt.

As stated earlier, Barzelis has not shown that a rejection of payments by Flagstar was an actual breach of the Security Instrument, and she fails to show that Flagstar improperly "attempt[ed] to collect interest or a charge" under the Security Instrument.[7]  Barzelis could have explained in her deposition in what ways Flagstar misrepresented her debt or charged improper fees, but she did not.  When asked in her deposition about the

---

[7] Barzelis's argument that Flagstar violated § 392.303(a)(2) by attempting to collect interest, fees, etc., that were not authorized under the Security Instrument fails because the Security Instrument provides a plethora of fees that Flagstar could rightfully charge, including the ones complained of by Barzelis. (See Pl.'s App. (doc. 102) 17-34.) Further, the Security Instrument specifically provides that "[i]n regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." (*Id.* at 26.) Barzelis does not point to any language under the Security Instrument that expressly prohibits the fees, interest, etc., that Flagstar has attempted to collect or charge. The plain language of the statute shows that Flagstar was within its rights to attempt to collect on various charges authorized by the Security Instrument. *See* TEX. FIN. CODE § 392.303(a)(2).

alleged misrepresentations by Flagstar and the improper fees assessed, Barzelis responded "I don't recall." (Def.'s App. (doc. 98) 75-77.)  Barzelis's "I don't recall" responses and her counsel's repeated objections to the deposition questions provide no evidentiary support for her claims regarding the misrepresentation of debt or improper fees assessed.  And although the Court must draw all inferences in Barzelis's favor, *see Sanders-Burns*, 594 F.3d at 380, she simply does not provide the Court with any evidence to allow a favorable inference to be drawn for her. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam)(noting that factual controversies should be resolved in the nonmovant's favor "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.") "[A court should] not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (citation omitted). Barzelis has failed to demonstrate a genuine dispute of material fact as to Flagstar's violation of §§ 392.304(a)(19) and 392.303(a)(2). Consequently, the Court GRANTS Flagstar's motion for summary judgment as to both claims.

Next, Barzelis alleges that Flagstar violated § 392.304(a)(8)[8]

---

[8] "Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8).

by "improperly reject[ing] [her] payments" and "fail[ing] to allow Plaintiff to cure any alleged default, thus misrepresent[ing] the extent and amount of the debt to Plaintiff." (Pl.'s 2d Am. Compl. (doc. 87) 9, ¶ 32.) Barzelis points to deposition testimony given by one of Flagstar's representatives as proof that the payments were rejected. (See Pl.'s App. (doc. 103) 76-77.) In pertinent part, the testimony is as follows:

> Q. First off, how do we know that checks were sent back to the trustee? Is it on this sheet?
>
> A.  The payments were never applied.
>
> *    *    *
>
> A.  Okay. No payments were--the payments may have come in, but they were returned. They were never posted to the account.
>
> Q.  You said that you had researched that. What was the reason for that?
>
> A.  The borrower filed bankruptcy, and during the time of the proof of claim they had to modify the borrower's claim. When it came back to Flagstar Bank, Flagstar Bank was not included in the plan, so therefore we could not accept payments for the plan.

(*Id.*) Again accepting that Flagstar refused the payments, Barzelis has still failed to show how this refusal was "improper" under the Security Instrument or has "misrepresented the character, extent, or amount of a consumer debt." Once again, Barzelis fails to cite case law, statutes, or evidence that would suggest that Flagstar "improperly rejected" her payments.

Finally, Barzelis alleges that Flagstar has violated §

392.301(a)(8)[9] by "threatening to foreclose when it was prohibited by the Security Instrument from doing so." (Pl.'s 2d Am. Compl. (doc. 87) 10.) To support her claim, Barzelis reasons in her response that Flagstar has violated the statute by: (1) accelerating the Note and attempting to foreclose while being in violation of RESPA; and (2) by not sending a notice of default before acceleration as required by paragraph 21 of the Security Instrument. (Pl.'s Br. (doc. 102) 27.) Flagstar argues that any alleged RESPA violation occurred years after any threat to foreclose and that it "provided notice of default and an opportunity to reinstate the note prior to acceleration." (Def.'s Reply (doc. 105) 3; Def.'s App. at 46.) To the extent that Barzelis is claiming that a violation of RESPA, by itself, prevented Flagstar from legally foreclosing on the property, that claim is denied as not being properly before the Court. *See Thomas v. EMC Mortgage Corp.*, No. 4:10-CV-861-A, 2011 WL 5880988, at *8 (N.D. Tex. Nov. 23, 2011)(McBryde, J.), *aff'd*, 499 F. App'x 337 (5th Cir. 2012)(noting that claims not raised in the petition but raised for the first time in response to defendants' motion for summary judgment are not properly before the court).

Based on the allegations in Barzelis' second amended complaint, the Court understands Barzelis to assert that a

---

[9] "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8).

violation of RESPA by Flagstar also violated the Security Instrument. (See Pl.'s 2d Am. Compl. (doc. 87) 87.) Barzelis does not cite, however, a provision in the Security Instrument--and the Court is unable to find one--that specifies that a RESPA violation constitutes a breach or that such violation precludes Flagstar from "threatening to foreclose" on the property. *See Thomas*, 2011 WL 5880988, at *8 (noting that a violation of RESPA will not support a claim for breach of contract when the deed of trust states it will be governed by federal law and merely mentions RESPA in the deed of trust, but also acknowledging that a separate claim for a RESPA violation could exist). Barzelis also fails to cite a statute or any case law that shows that a RESPA violation for failure to timely acknowledge or respond to a QWR also constitutes a violation of § 392.301(a)(8). Consequently, the Court GRANTS summary judgment for Flagstar as to Barzelis's claim that Flagstar "violated § 392.301(a)(8) when it threatened to foreclose despite being in violation of RESPA."

Next, Barzelis also contends that Flagstar violated § 392.301(a)(8) when it accelerated and attempted to foreclose without providing her the required notice of default and opportunity to cure as required under the Security Instrument. Flagstar posits that the January 14, 2010 letter it sent to Barzelis prior to her filing bankruptcy was sufficient to meet the notice-of-default requirement. And Flagstar, through its attorney,

also sent a letter to Nicholas Barzelis on July 22, 2012, that notified the Barzelises of the mortgage's referral to a law firm for foreclosure. The letter notes that there were still foreclosure alternatives available to the Barzelises. Under Texas law, a letter notifying the borrower that a foreclosure application is pending constitutes notice of acceleration. *See Burney v. Citigroup Glob. Mkts. Realty Corp.*, 244 S.W.3d 900, 903-04 (Tex. App.--Dallas 2008)(noting that a noteholder may take some other unequivocal action besides sending notice of acceleration indicating that a debt is accelerated and concluding that the bank properly accelerated when it sent a notice of default and six months later sent a letter to the borrower that an application of foreclosure had been filed).

In the present case, it appears that approximately thirty months passed between the notice of default and an actual acceleration. The Security Instrument, however, requires only that Flagstar give at least thirty-days' notice prior to acceleration. The January 14, 2010 letter met this requirement. The Security Instrument does not specify how long after the notice of default that Flagstar would have to accelerate the note or whether an additional notice of default was required before acceleration could occur. Although it may have seemed like a long time between the notice of default and the actual acceleration, there is no authority that requires acceleration to take place immediately or

within a specified time after a notice of default and intent to accelerate is given. *See Reed v. Litton Loan Servicing, LP*, No. 1:10-CV-217, 2011 WL 817357, at *4 (E.D. Tex. Jan. 27, 2011)(concluding that sending a notice of intent to accelerate eleven months prior to actual acceleration met the notice requirements), *report and recommendation adopted*, No. 1:10-CV-217, 2011 WL 810682 (E.D. Tex. Mar. 2, 2011); *see also Ackley v. F.D.I.C.*, 981 F. Supp. 457, 460 (S.D. Tex. 1997)(noting that if anything, the additional time is helpful because it gives more opportunity to cure the default). Accordingly, the Court GRANTS Flagstar's motion for summary judgment as to Barzelis's § 392.301(a)(8) claims.

F.   Real Estate Settlement Procedures Act

Barzelis alleges that Flagstar has violated the Real Estate Settlement Procedures Act ("RESPA") as codified under 12 U.S.C. § 2601, *et seq*. Barzelis claims that she sent two qualified written requests to Flagstar under RESPA: the first on April 12, 2012, and the second on June 7, 2012. Under RESPA, a qualified written request is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that includes the name and account number of the borrower and states the borrower's reasons for believing that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B). At

the time the two alleged QWRs were sent, a servicer was required to acknowledge receipt of a QWR within twenty days, and respond to the QWR within sixty days.[10] Although it appears from the evidence submitted that Flagstar responded within sixty days of the first QWR request, (see Pl.'s App. (doc. 102) 41.), Flagstar does not provide any evidence to show that it acknowledged Barzelis's first QWR within twenty days as required by RESPA at the relevant time. And although Barzelis's first QWR is not dated and the certified mail return receipt does not have a legible date, Barzelis represents the date stamp shows that Flagstar received her QWR on April 16, 2012. (See id. at 42-43, 74.) Thus, even if the Court looks to the date of Flagstar's letter (May 25, 2012) instead of the date it was mailed (May 29, 2012), Flagstar still did not acknowledge receipt within the required twenty days. (See *id*. at 41.) According to Flagstar, it has "adequately responded to the purported QWR in a manner allowed by RESPA." (Def.'s Mot. Summ. J. (doc. 97) 17.) But Flagstar provides no evidence, makes no argument, and does not cite any case law that would show that it complied with the acknowledgment requirement under RESPA for Barzelis's first purported QWR.

Next, Flagstar argues that it was not required to respond to Barzelis's purported second QWR because she still had not provided

---

[10] The current version of § 2605(e)(1)(A), which became effective January 10, 2014, shortens the time to acknowledge a QWR to five days, and the response deadline to thirty days.

the requested "letters of authority" that would show Barzelis was the successor-in-interest to her husband's estate. Barzelis did, however, explain in her second letter to Flagstar that she did not "need letters of authority from a probate estate" because the estate was not contested. (See Pl.'s App. (doc. 103) 43.) Flagstar counters by stating it has complied with federal regulation under 12 C.F.R. § 1024.38(b)(vi), which requires Flagstar "to maintain policies and procedures so that, upon learning of the death of a borrower, [it] can promptly identify and facilitate communication with the successor in interest of the deceased borrower." (Def.'s Mot. Summ. J. (doc. 97) 17.) This argument is unpersuasive under the facts in this case and Texas law.

Under the definitions section of the Security Instrument, "Borrower" is defined as: "NICHOLAS AND STACY K. BARZELIS, HUSBAND AND WIFE." (See Pl.'s App. (doc. 102) 17.) And both Barzelises executed the Security Instrument as required under the Texas Constitution to create a valid homestead lien. *See* TEX. CONST. ART. XVI, § 50(a)(6)(A); *see also Williams v. Wachovia Mortgage Corp.*, 407 S.W.3d 391, 395 (Tex.App.--Dallas 2013)(discussing spousal consent under Texas law)). For the purposes of the Security Instrument, the Court is not sure why Flagstar could not give Stacy K. Barzelis the information requested when she is clearly identified as a "Borrower." Further, as the Fifth Circuit has previously noted in this case, "the debt was presumptively a

community debt." *Barzelis v. Flagstar Bank, F.S.B.*, 784 F.3d 971, 977 (5th Cir. 2015)(citations omitted). "Similarly, the house was community property at the time of death." *Id*. (citing TEX. FAM. CODE § 3.003; *Richardson v. Richardson*, 424 S.W.3d 691, 697 (Tex.App.-El Paso 2014, no pet.)).  The Fifth Circuit further noted that once Nicholas Barzelis died, "the community estate, including the property, passed to Stacy [Barzelis] subject to the community debt of the Note[.]" *Id*. (citing TEX. ESTATES CODE § 201.003). "[A]nd no administration was necessary for the community property under Texas law." *Id*. (citing TEX. ESTATES CODE § 453.002). The Fifth Circuit further concluded that Stacy Barzelis "was the successor-debtor on the Note and was the legal borrower." *Id*. (citation omitted). Flagstar does not dispute that Stacy Barzelis was considered a borrower or the successor-debtor, nor does it provide evidence that the property was the separate property of Nicholas Barzelis.[11] Flagstar also does not argue that an estate administration was required under Texas law. But Flagstar does acknowledge that it never sent a response to the second purported QWR. Consequently, the Court DENIES Flagstar's motion for summary judgment as to each alleged RESPA violation.

---

[11] Under Texas law, property possessed during or upon dissolution of the marriage is presumed community property, but such presumption is rebuttable by clear and convincing evidence. *See* TEX. FAM. CODE § 3003.

## IV.   CONCLUSION

Based on the foregoing, the Court GRANTS in part and DENIES in part Flagstar's motion for summary judgment (doc. 97). Accordingly, the only remaining claim under consideration by the Court is Barzelis's claim that Flagstar has violated RESPA.

SIGNED September 26, 2016.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE